440 So.2d 951 (1983)
STATE In the Interest of T.M. and W.M.
No. 15787-CAJ.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
Rehearing Denied November 10, 1983.
Writ Denied January 4, 1984.
*952 Richard Ducote, Staff Atty., Dept. of Health & Human Resources, New Orleans, for appellant.
Blaine Adkins, West Monroe, for appellee.
Before JASPER E. JONES, FRED W. JONES and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
The Louisiana Department of Health and Human Resources ("DHHR") instituted this proceeding under the pertinent statutory provision to have the two minor children, T.M. and W.M., declared abandoned by their parents. After a hearing attended by the parents and their appointed attorneys, judgment was rendered adjudicating the children abandoned by their father but not with reference to their mother.
DHHR appealed the judgment, contending the juvenile judge erred in finding that DHHR did not prove by clear and convincing evidence that the children were abandoned by their mother. The father of the children did not appeal.
Since our review of the record leads to the conclusion that the juvenile judge was not clearly wrong in his factual determination that the mother never intended to permanently avoid parental responsibility for these children, we affirm.
Based upon affidavits executed by the parents of T.M. (born 3/30/75) and W.M. (born 12/23/76) that they were no longer able to care for their children, on April 15, 1977 the juvenile court placed the temporary custody of the youngsters with DHHR. Thereupon, the children were placed in separate foster homes in the Monroe area.
During the ensuing months the DHHR caseworker began working with the mother [now Mrs. C] to establish regular visitations with her children, but was hampered by Mrs. C's tendency to make unplanned visits to the foster homes. Be that as it may, the caseworker testified at the hearing that during the period from April to October 1978 the mother evidenced a constructive attitude, expressed a repeated desire for the return of her children, and worked to establish a home for them.
In October 1978 Mrs. C moved from Ouachita Parish to Union Parish, coming under the supervision of another DHHR caseworker. Consistent with department policy, after a preparatory period this caseworker, with court approval, returned the physical care of the children to their mother on December 10, 1979. However, because of Mrs. C's severe physical abuse of W.M. [for which she was later convicted of simple battery and incarcerated] the children were returned to the DHHR and foster care on January 14, 1980. The mother completed her jail sentence and was released from confinement in August 1981.
Upon the request of Mrs. C, in September 1981 the DHHR caseworker arranged for a visit by the mother to her children. Mrs. C failed to appear at the designated time and place for this visit. Subsequently, DHHR learned that on September 15, 1981 Mrs. C moved with her husband [not the father of these children] to Odessa, Texas, where the latter felt there were better employment opportunities. The mother failed to notify DHHR of this move and of her new address. Further, during the following 15 months Mrs. C made no effort to contact these two children, sent no presents on their birthdays or on Christmas, and contributed nothing to their support. Consequently, on February 11, 1983 the DHHR filed this petition for a decree of abandonment. Upon receiving notice of the date fixed for the hearing, Mrs. C returned to Louisiana to contest the matter.
*953 At the hearing in April 1983 Mrs. C adamantly denied any intention to permanently surrender her parental rights to these children. She reviewed her consistent efforts, after placement of the youngsters in foster care, to establish regular visitations with them and, ultimately, to secure the return of their custody. On the critical question of why she failed to give DHHR notice of her move to Texas and to contact the children for a fifteen month period, Mrs. C rationalized that such an atmosphere of hostility permeated her relations with DHHR [because of the child cruelty incident] any effort on her part to get in touch with the children would have been frustrated.
In oral reasons for judgment in favor of the mother, based at least in part on his dealing with this case since placement of the children in 1977, the juvenile judge commented:
"I really believe that the mother's fire [interest in the children] was quenched by our conduct, by the state's conduct, if it has been quenched, and I am not sure it has been quenched. The court is not willing on the record before it to terminate the mother's rights."
La.R.S. 9:403 provides in part:
A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
* * * * * *
(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption.....
As DHHR points out in its appellate brief, this statute has been amended a number of times, with the latest modification coming in 1980. Review of the legislative history indicates a trend toward liberalizing previous restrictions placed upon the state in actions of this nature. However, we continue to adhere to the basic principle that a decree of abandonment which irrevocably breaks one of the closest and most fundamental human relationships must be predicated upon evidence of circumstances clearly manifesting the parent's intention to permanently avoid parental responsibility.
In this case there is no question but that Mrs. C did not provide for the care and support of her two children for at least a four month period. It is not clear whether in his reasons for judgment the juvenile judge found circumstances showing an intention to permanently avoid parental responsibility [thereby triggering the "presumption" of intention to permanently abandon] or whether he concluded that this presumption had been refuted. Regardless, we cannot say that his factual determination was manifestly erroneous. Implicit in his reasoning is the conviction that Mrs. C's initial demonstrated interest in securing the return of her children was never changed, reversed or extinguished, despite the prolonged period during which she failed to contact the youngsters. Great weight must be accorded by us to this conclusion of the conscientious juvenile judge, who was intimately acquainted with the case and observed the witnesses at the hearing.
The argument of DHHR that this mother is being rewarded for her hostile conduct which "chilled" her relations with the department [considered by the juvenile judge as justification for her failure to contact the children during the 15 month period] is without merit. While Mrs. C's mistreatment of her child is reprehensible, the juvenile judge correctly emphasized that this is not a child custody case. Further, the mother's one irrational act of abuse, standing alone, does not constitute conclusive evidence of an intent to permanently avoid parental responsibility.
*954 At the conclusion of the hearing the juvenile judge advised Mrs. C of her legal right to visit these children, under DHHR supervision. As he wisely explained, failure by the mother to exercise that right in the future may well expose her to another abandonment action with the possible rendition, in that proceeding, of a decree of abandonment.
For these reasons, we affirm the judgment of the juvenile court denying DHHR's petition for an adjudication of abandonment of these children with reference to the mother.